**Louis J. RODRIGUE, Administrator of the Estate of William J. Rodrigue, Plaintiff, Appellant,**

v.

**UNITED STATES of America, Defendant, Appellee.**

No. 92–1009.

United States Court of Appeals, First Circuit.

Heard May 7, 1992.

Decided July 13, 1992.

---

Compare,
 incidental: likely to happen or naturally appertaining (usually followed by *to* ).

Random House Dict.

David Shaughnessy with whom John Wall and Law Office of John Wall, Boston, Mass., were on brief, for plaintiff, appellant.

Diana Gordon, with whom Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., John Pappalardo, Acting U.S. Atty., Mary Elizabeth Carmody, Asst. U.S. Atty., Boston, Mass., Jeffrey Axelrad, Director, and Paul F. Figley, Deputy Director, Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for defendant, appellee.

Before BREYER, Chief Judge, ALDRICH and COFFIN, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This declaratory judgment action, 28 U.S.C. § 2201, involving the death of a serviceman raises at the outset a question of subject matter jurisdiction. Because Airman William Rodrigue's death occurred out of the country, relief lay not in the Federal Tort Claims Act (FTCA), but in the Military Claims Act (MCA), 10 U.S.C. §§ 2731 *et seq.* Unlike the FTCA, where prior administrative denial is but a condition precedent to suit, 28 U.S.C. § 2675, the MCA, 10 U.S.C. § 2735, provides as follows:

Notwithstanding any other provision of law, the settlement [1] of a claim under section 2733 ... of this title is final and conclusive.[2]

Plaintiff, representative of the deceased airman, upon administrative rejection, took the position that the federal courts can nevertheless review at least questions of law. The district court so held. *Rodrigue v. United States*, 760 F.Supp. 223 (D.Mass. 1991). We partially concur.

Briefly, William Rodrigue was on active duty at the United States Air Force Kadena Air Base in Okinawa, Japan. While on leave, he and several other enlisted men went swimming at the beach on Hedo Point, some twenty-five miles from the Base. He, and another airman, were carried out to sea by strong currents. When the shore airmen, and the local Japanese police, were unable to accomplish a rescue, they notified the Base, which promised to send a helicopter shortly, but then took nearly four hours. Unfortunately, this was too late.

In seeking Air Force approval of damages under the MCA plaintiff alleged that the Air Force owed a duty based on the military relationship, and, alternatively, that it incurred a Good Samaritan duty of care when it promised to launch a rescue. The Air Force rejected, its final decision being that its Good Samaritan conduct was on a purely voluntary basis, but that if there was any obligation it arose out of military service, and was barred because the airman's activity at the time was "incident to service," excluded under the act. 10 U.S.C. § 2733, subsection (b)(3). In response, plaintiff asked the district court to remand to the Air Force with instructions that there was a legal duty and that Rodrigue was not barred. Although, as previously stated, the court found jurisdiction, it dismissed on the merits. 788 F.Supp. 49. We first consider jurisdiction.

1. "Settlement" includes administrative disallowance. 10 U.S.C. § 2731.

2. As we shall develop later, the statute is to be read as if there were added "for all purposes."

## FINALITY

The manifest difference in the FTCA and the MCA in the power given the government agency suggests radically different consequences. At the same time it is to be recognized that total finality of administrative rulings is the exception. In *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985), plaintiff's application to defendant for disability benefits was rejected by defendant, and its action was sustained by the Merit Systems Protection Board. Plaintiff then, in effect, sought review by an action in the Court of Claims. Defendant resisted on the basis of a statute, 5 U.S.C. § 8347(c), that provided,

> Questions of dependency and disability arising under the section shall be determined by ..., and determinations concerning these matters are final and conclusive and are not subject to review.

*See Lindahl*, 470 U.S. at 773, 105 S.Ct. at 1624.[3]

Quoting from earlier cases, the Court stated that preclusion of judicial review required "clear and convincing evidence" of legislative intent in the light of "express language, ... the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." 470 U.S. at 778–9, 105 S.Ct. at 1627. The Court concluded that section 8347(c)'s words "concerning these matters" meant that "factual underpinnings ... may not be judicially reviewed, [but] such review is available to determine whether 'there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error "going to the heart of the administrative determination."' *Scroggins v. United States*, 184 Ct.Cl. [530], at 534, 397 F.2d [295], at 297 [1968]." 470 U.S. at 791, 105 S.Ct. at 1633.

Before discussing *Lindahl* we review the Court of Appeals cases that have previous-

3. The statute has had a kaleidoscope history, but this is the wording the Court considered.

ly considered 10 U.S.C. § 2735. In *Towry v. United States*, 620 F.2d 568 (5th Cir. 1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981), affirming on the opinion below, 459 F.Supp. 101, the court held that § 2735 forbade review where the decision was arbitrary, capricious, an abuse of discretion, and not based on substantial evidence, and that this was not a denial of due process.

Without going into that detail, in *Labash v. United States Department of the Army*, 668 F.2d 1153 (10th Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2299, 73 L.Ed.2d 1303 (1982), the court held that § 2735 was "clear and convincing evidence" that there was intended to be no review, and that in the absence of a constitutional claim there could be no relief.

In *Broadnax v. United States Army*, 710 F.2d 865 (D.C.Cir.1983), the court stated that review may well be permitted in special circumstances, citing *Scroggins v. United States*, 184 Ct.Cl. 530, 397 F.2d 295, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), *ante*, but held it did not have such a case.

All of these, and a district court case holding the other way, *Welch v. United States*, 446 F.Supp. 75 (D.Conn.1978), were reviewed in *Poindexter v. United States*, 777 F.2d 231 (5th Cir.1985), the court repeating its decision in favor of preclusion announced in *Towry, ante*.

Interestingly enough, none of these Circuit Court cases indicated whether its implied reservation regarding constitutionality was based upon found Congressional intent or on judicial force majeure. In *Lindahl* the Court rested on presumed Congressional intent not rebutted by clear and convincing evidence. It found a lack in that the phrase "concerning these matters are final" referred to "[q]uestions of dependency and disability," which were questions of fact, so that there was no provision precluding review of questions of law. "Section 8347(c) speaks of the preclusive effect of OPM determinations, but says

nothing one way or the other about the finality of MSPB judgments." 470 U.S. at 779, 105 S.Ct. at 1627. In our case § 2735 refers to "settlement," the ultimate decision.

Incidentally, as a matter of language, we note that when what is now 10 U.S.C. § 2735 was originally drawn in 1943, 57 Stat. 372, it read, in part, "final and conclusive for all purposes." *See, United States v. Wade*, 170 F.2d 298, 299 (1st Cir.1948). There the plaintiff, who suffered personal injury and property damage, purported to settle the latter, and then brought suit. We said, 170 F.2d at 300,

> We think the District Judge was right in holding that the items for medical expenses and property damage were out of the case, because covered by the settlement with the War Department, but that appellees were still entitled to recover for pain and suffering and for loss of earning capacity.

Over the years the statute has been changed, and in the 1956 revision the last clause was shortened to "final and conclusive." The present Explanatory Notes state, "The words 'for all purposes' ... are omitted as surplusage." This is correct. An unnumbered House Report (Judiciary) on the revision of Title 10 (and Title 32— National Guard, *see post* ) reprinted in 1956 U.S.Code and Admin.News 4613, 4620, 84th Cong. 2d Sess., confirms that the revised statute should be read as the old.

Further, from a historical standpoint, in 1943 Congress, rather than having *Lindahl*, had before it *United States v. Babcock*, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011 (1919), where the Court denied further action in the Court of Claims where the statute provided, *see* 250 U.S. at 331, 39 S.Ct. at 465, without indicating any exceptions,

> That any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered.[4]  250 U.S. at 331, 39 S.Ct. at 465.

---

4. *See, also, Williamsport Wire Rope Co. v. United States*, 277 U.S. 551, 561, 48 S.Ct. 587, 589, 72 L.Ed. 985 (1928); *Merrifield v. United States*, 14

Cl.Ct. 180 (1988) (no review in analogous statute); *Shull v. United States*, 228 Ct.Cl. 750, 755,

Significantly, *Babcock* involved a substantive precursor of the MCA.

The Eleventh Circuit has noted that *Lindahl* involved a contractual obligation. In *Rhodes v. United States*, 760 F.2d 1180 (11th Cir.1985) there was a statute, 32 U.S.C. § 715, like the MCA, except that it applied to injuries occasioned by the National Guard, not covered in the MCA. The finality provision copied 10 U.S.C. § 2735. In refusing to review an administrative rejection the court commented on the fact that if intent to preclude judicial recourse requires "clear and convincing evidence," so does government consent to suit for torts. *See, e.g., United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969) ("must be unequivocally expressed"). On this basis it might be said that presumptions as to interpretation conflict, and should cancel out.

With this array of decisions, and statutory language, read as "for all purposes," that, unlike *Lindahl*, shows no apparent ambiguity, we do not pause to detail the small bits of legislative comment cited to us as contradictory, except to say that our examination reveals inconsistency and nothing persuasive. We also need not resolve the erudite question whether Congress affirmatively intended that constitutional questions be reviewed or, simply, that the constitution requires it. *Cf. Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623 (1986). We do not propose to break new ground by holding that Congress can forbid it. *Cf. Bartlett v. Bowen*, 816 F.2d 695 (D.C.Cir. 1987) (2–1). Like our sister Circuits, however, we find, contrary to the district court, and the decision is for us de novo, *G.D. v. Westmoreland School District*, 930 F.2d 942, 946 (1st Cir.1991), that Congress intended no other review. We turn, accordingly, to further consideration of the facts to determine, simply, whether any due process issue is raised.

1981 WL 21476 (1981) (unsigned order and opinion).

**5.** *Woodside v. United States*, 606 F.2d 134 (6th Cir.1979); *cert. denied*, 445 U.S. 904, 100 S.Ct.

## MERITS

■ There is no claim that the Air Force recommended Hedo Point Beach for swimming, or exercised any supervision or control over it. Passing the question of the Good Samaritan rule, it owed Rodrigue as a member of the general public, no duty of rescue. *Cf. Daley v. United States*, 499 F.Supp. 1005 (D.Mass.1980) and cases cited. While special relationships may create a duty, e.g., ship and crewman, *Frank v. United States*, 250 F.2d 178, 180 (3d Cir. 1957), *cert. denied*, 356 U.S. 962, 78 S.Ct. 1000, 2 L.Ed.2d 1069 (1958), we have found no case to the effect that an individual, simply because he is a serviceman, has a claim against the Armed Forces. And as soon as there is a special relationship, i.e., activity incident to service, *Feres* precludes liability. *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

■ The Good Samaritan rule presents a narrower question. The government is not exempt from this rule, at least with respect to the general public. *Cf. United States v. Sandra & Dennis*, 372 F.2d 189 (1st Cir.), *cert. denied*, 389 U.S. 836, 88 S.Ct. 48, 52, 19 L.Ed.2d 98 (1967). It has at least a plausible claim, however, that it is not liable here. We are not impressed by the Air Force's exculpatory finding that recreational swimming, 25 miles from the base, was an incident of service; we know of no case supporting such a conclusion.[5] *Compare Lauer v. United States*, decided this day, 968 F.2d 1428 (1st Cir.1992) (walking on approach road to base, owned and maintained by Navy). But even if applicable, the Good Samaritan rule does not impose liability for mere negligent failure to confer a benefit, but only for negligently making matters worse. *United States v. DeVane*, 306 F.2d 182, 186 (3d Cir.1962); Rest. (second) of Torts, § 323 (1965). In our earlier case on this subject, *United States v. Sandra & Dennis Fishing Corp.*,

1080, 63 L.Ed.2d 320 (1980), illustrates the government's difficulties in finding recreational activities far from the base to be service related.

*ante,* the Coast Guard undertook to tow a disabled vessel that was not in any immediate danger, and, through negligence, caused her to strand. The district court made the significant finding that there would have been no stranding but for the Coast Guard's misconduct. *Petition of the United States,* 255 F.Supp. 737, 750–51 (D.Mass.1966). So, here, plaintiff does not state a case simply by alleging the Air Force was negligent; it is necessary to show, more likely than not, *Goudy & Stevens, Inc. v. Cable Marine, Inc.,* 924 F.2d 16, 20–21 (1st Cir.1991), that by its negligence it worsened Rodrigue's position.

 Plaintiff's claim to the Air Force was that at about 6:30 p.m., after rescue attempts by the local Japanese police had failed, the Air Force was notified of the airmen's exposure and danger of drowning and replied that it would respond shortly. When it did not come, further calls were made and, again, it said it would come shortly. However, the helicopter did not arrive until 10:15, which was too late. No cries had been heard from the swimmers after 9:00. Plaintiff's final appeal letter read, and we can go no further here, *Lopez v. United States,* 758 F.2d 806, 809 (1st Cir.1985); *Bush v. United States,* 703 F.2d 491, 494 (11th Cir.1988),

> Had Air Force personnel not repeatedly assured callers of imminent rescue by helicopter, other rescue attempts *might have been successfully undertaken* during the four hours Sr. Airman Rodrigue struggled in the water crying for help.

(Emphasis supplied). Unfortunately, the original claim, from whose denial plaintiff had appealed, was not before the court. Whether it supported the more specific allegation in the complaint [6] does not appear, but, even so, there was apparently no claim beyond "might have been successfully undertaken."

This is a factual difficulty; "might have been" falls short of "would have been." But even if this should have been interpreted by the Air Force in plaintiff's favor, an incorrect application of the law of torts by an agency does not violate the Constitution. We are in agreement with *Towry v. United States, ante.* To hold otherwise would place all administrative decisions in the constitutional law classification. There is a substantial difference between a mistake and failure of due process.

*Affirmed.*

---

**6.** 16. At approximately 8:05 p.m. Kadena Air Base learned that the Japanese Maritime Safety Agency, the agency responsible for Japanese rescue efforts, would not aid the swimmers in distress until the U.S. military resources were exhausted.